State of Nebraska, appellee, v.
Nathan J. Brauer, appellant.
___ N.W.2d ___

Filed December 27, 2013.    No. S-12-1169.

1. **Trial: Convictions.** An appellate court will sustain a conviction in a bench trial
   of a criminal case if the properly admitted evidence, viewed and construed most
   favorably to the State, is sufficient to support that conviction.
2. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal convic-
   tion for sufficiency of the evidence to sustain the conviction, an appellate court
   does not resolve conflicts in the evidence, pass on the credibility of witnesses,
   evaluate explanations, or reweigh the evidence presented, which are within a fact
   finder's province for disposition. Instead, the relevant question is whether, after
   viewing the evidence in the light most favorable to the prosecution, any rational
   trier of fact could have found the essential elements of the crime beyond a rea-
   sonable doubt.
3. **Sexual Assault: Proof.** Whether there is sufficient evidence to prove sexual
   arousal or gratification (which, by necessity, must generally be inferred from the
   surrounding circumstances), is extraordinarily fact driven.

Appeal from the District Court for Cheyenne County: Derek
C. Weimer, Judge. Affirmed.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Snyder,
Chaloupka, Longoria & Kishiyama, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for
appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Following a bench trial, the district court found Nathan
J. Brauer guilty of sexually assaulting a child in the third
degree.[1] The record shows that Brauer poked a child in the
penis, over his clothes, using two fingers. The touch was
brief, and it happened a single time. The sole issue on appeal
is whether there was sufficient evidence to conclude beyond
a reasonable doubt that Brauer's touch was "sexual contact,"

---

[1] Neb. Rev. Stat. § 28-320.01 (Reissue 2008).

which is limited to conduct that can be "reasonably construed as being for the purpose of sexual arousal or gratification."[2] Although some facts suggest an innocent explanation, there are sufficient other facts—most notably, Brauer's incriminating statements to law enforcement—which support the court's finding. We affirm.

## BACKGROUND

### FACTUAL AND PROCEDURAL HISTORY

Jeremy N. and Danae N. were long-time friends with Brauer. In the spring or early summer of 2011, Jeremy and Danae asked Brauer (who was not employed at the time) if he would like to watch their children, D.N. (about a year old) and J.N. (4 years old). Brauer agreed to do so, though the arrangement lasted only through June; at that point, Jeremy and Danae no longer needed Brauer to babysit their children.

During or soon after that time, J.N. made statements or asked questions that concerned Jeremy and Danae. At one point, while Jeremy and Danae were watching television, J.N. "turned around and . . . said, mommy, daddy nobody is supposed to touch your butt or peenie, right?" Jeremy and Danae told him that "no, nobody is ever supposed to touch you. And [J.N.] let it go from there." Several weeks later, Brauer came by the house to see Jeremy's new camper, and J.N. told Jeremy that Brauer "made him feel funny, made him feel that [Brauer] wanted to touch [J.N.'s] butt or his peenie." After that, Jeremy and Danae did not allow Brauer to see J.N., though Brauer still came around the house.

During this time and into the early fall, Danae felt that there was something wrong with J.N. but she could not tell what it was. Doreen Schaub, J.N.'s daycare provider, had also noticed changes in J.N.'s behavior and was worried about him. On September 29, 2011, while at the daycare, Danae asked Schaub to help her try to discover what was wrong with J.N. Danae and Schaub met with J.N., and Danae asked him whether there was something wrong, and J.N. said no. Danae mentioned Brauer's name, and J.N. said that Brauer had not done anything

[2] Neb. Rev. Stat. § 28-318(5) (Cum. Supp. 2012).

to him. Schaub told J.N. that he had to tell the truth, and then J.N. said that Brauer had touched his "peepee." At that point, Danae became hysterical, and Schaub called Danae's mother to come to the daycare. Danae's mother called law enforcement, and an officer arrived shortly thereafter. The officer arranged for J.N. to be interviewed at 7:30 that night.

Lt. Keith A. Andrew, of the Sidney Police Department, an investigator in crimes against children, interviewed J.N. that night. Much of the interview consisted of Andrew's attempting to build a rapport with J.N. They discussed J.N.'s family, and Andrew emphasized that J.N. had done nothing wrong. At the beginning of the interview, Andrew tested J.N. to be sure that J.N. understood the difference between a truth and a lie. In the middle of the interview, Andrew had J.N. look at textbook pictures of a boy and of a man and identify what he called each of their parts. Andrew did this because "some children will identify like their penis or their groin area with multiple names[,] so we want to make sure that when they are telling us about their peenie or whatever that is[,] we know what part they are talking about."

Eventually, J.N. asked whether Brauer was in trouble, identified Brauer as his dad's "buddy," and explained that Brauer used to babysit J.N. In response to Andrew's questions, J.N. explained that Brauer had touched J.N.'s "peenie," but not his "bottom." J.N. explained that it had happened at Brauer's house, in the living room, after they had watched a movie. J.N. showed Andrew how Brauer had touched him, indicating that it was a two-finger tap or poke to his penis. J.N. consistently maintained that the touch happened only once and that he had all of his clothes on when it happened. J.N. said that he told Brauer "don't do that ever again" and Brauer apologized. Throughout the interview, J.N. was cheerful, cooperative, and unafraid.

Toward the end of October 2011, Andrew visited Brauer at his workplace. Andrew informed Brauer of the allegations, which Brauer denied. Andrew "asked him if there was ever any time he had touched [J.N.'s] penis area for any reason[,] including playing[,] and he said absolutely not." Andrew asked Brauer whether he would meet with him for some followup

questions; Brauer agreed, and Andrew arranged for Brauer to come to the Nebraska State Patrol office for an interview on November 8.

During that interview, Brauer initially denied ever touching J.N. but eventually acknowledged the touch described above. Though Brauer denied ever having any explicit sexual contact (such as penetration or masturbation) with J.N., he did make several incriminating statements, which will be set forth in detail below. Law enforcement released Brauer following the interview, but arrested him a few hours later.

## The Trial

The State charged Brauer with sexually assaulting a child in the third degree. Brauer waived his right to a jury trial and elected to proceed with a bench trial. At trial, J.N., along with his parents, his daycare provider, and the various law enforcement officers involved in the investigation (chiefly, Andrew) testified to the above facts. J.N. also related a host of additional allegations which he had never expressed before in his interview with Andrew or (presumably) to his parents. For example, J.N. testified that Brauer "dragged" J.N. into the bathroom and locked him in there, that the touch occurred in the bathroom, and that Brauer used his "whole hand."

## The Court's Order

Based on the trial court's opinion, the court gave no credence to J.N.'s additional allegations at trial, but the court did find Brauer guilty. The court made extensive factual findings, including that the touch was a two-finger touch or poke, that it occurred over J.N.'s clothes, and that it was brief and occurred only once. The court noted that the only contested element of the crime was "whether the State submitted sufficient evidence to prove beyond a reasonable doubt that [Brauer's] touching of [J.N.] was 'sexual contact' as that term is defined in the law." Brauer's touching of J.N. could be "sexual contact" only if it could be "reasonably construed as being for the purpose of sexual arousal or gratification of either party."[3]

---

[3] *Id.*

In finding that the State had proved sexual contact, the court emphasized a number of facts. The court noted that, at first, Brauer persistently denied any contact with J.N., then said "maybe he got close once when he picked [J.N.] up when they were wrestling around," and then eventually admitted to touching J.N. The court also noted that Brauer apologized immediately to J.N. and that during Brauer's interview with law enforcement, Brauer made suicidal statements. Viewed together, the court saw this as evidence of consciousness of guilt.

The court also emphasized the context around the touch. The court noted that Brauer acknowledged sharing "a kiss and hug of some kind with [J.N.] prior to the touching and that it made him feel really good," though the court acknowledged that Brauer said that it made him feel good mentally, but not sexually. The court noted that the touch occurred when Brauer was alone and unsupervised with J.N. And the court noted that, based on J.N.'s behavioral changes, "[t]his incident was obviously weighing on [J.N.]" Finally, the court emphasized Brauer's incriminating statements during his interview with Andrew, which the court characterized as "admissions."

After rendering its verdict, the court sentenced Brauer to 2 to 3 years in prison.

## ASSIGNMENT OF ERROR

Brauer assigns, restated, that the district court erred in finding that the State had proved beyond a reasonable doubt that Brauer's touch was "sexual contact."

## STANDARD OF REVIEW

[1,2] We will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction.[4] In making this determination, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence

---

[4] See *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010).

presented, which are within a fact finder's province for disposition.[5] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

## ANALYSIS

Brauer's argument is simple: He argues that the evidence was insufficient to support the verdict. Specifically, Brauer argues that the evidence was insufficient to show, beyond a reasonable doubt, that Brauer's touching J.N. was "sexual contact," which is limited to conduct which can be "reasonably construed as being for the purpose of [Brauer's] sexual arousal or gratification" under § 28-318(5). In support of his argument, Brauer argues, among other things, that the touch was minor, fleeting, and over the clothes, and that there were no "indicia of sexual arousal."[7]

We recently addressed the same issue, though in a different context, in *State v. Osborne*.[8] There, we referenced the Nebraska Court of Appeals' opinion detailing the underlying facts and then concluded that affirmance was proper after "having reviewed the briefs and record and having heard oral arguments, *and considering the relevant standard of review*."[9] This case presents different and, qualitatively speaking, weaker facts than *Osborne*; but we do not bring up *Osborne* to compare facts. Its relevance here, beyond presenting the same issue, is as a recent example of the role the standard of review plays in criminal cases at the appellate level.

There is an appellate maxim that "standards of review can be a party's best friend or they can be a party's worst enemy." That maxim rings true today, and to Brauer's detriment. The record could very well support inferences other than those drawn by the trial court. But under our standard of review, we

---

[5] See *id*.

[6] See *id*.

[7] Brief for appellant at 22.

[8] *State v. Osborne*, 286 Neb. 154, 835 N.W.2d 664 (2013).

[9] *Id*. at 156-57, 835 N.W.2d at 666 (emphasis supplied).

do not resolve conflicts in the evidence, reweigh the evidence, assess witness credibility, or evaluate explanations. Instead, we ask only whether—viewing the evidence in the light most favorable to the prosecution—any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It could.

The State charged Brauer with sexually assaulting a child in the third degree. Section 28-320.01(1) explains that "[a] person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." The crime is in the third degree if the "actor does not cause serious personal injury to the victim,"[10] which is the case here.

Because the ages of the relevant persons were undisputed, as was the existence of the touch itself, the only issue was whether the touch was "sexual contact" under § 28-318(5). Brauer did not dispute that he intentionally touched J.N.'s "clothing covering the immediate area of [J.N.'s] sexual or intimate parts." The only question was whether Brauer's touch could be "reasonably construed as being for the purpose of [Brauer's] sexual arousal or gratification." After reviewing the record, we conclude that there was sufficient evidence to support the trial court's finding beyond a reasonable doubt that Brauer's touch was "sexual contact."

As noted by the trial court, Brauer initially (and persistently) denied ever touching J.N. in or around his crotch for any reason, even accidentally. Then, when confronted by law enforcement officers, he admitted that he "had come in contact with [J.N.] on the upper leg area in the vicinity of the genitals." And during his interview with Andrew, Brauer eventually admitted that he had "poked" J.N. in the penis. The transcript of Brauer's interview with Andrew also reveals that Brauer contemplated suicide (though he assured Andrew he was not going to follow through), making statements like, "I'm going to go blow my head off." Brauer's initial refusal to acknowledge the touch until repeatedly confronted by law enforcement

---

[10] § 28-320.01(3).

officers, along with his clear understanding that what he had done was wrong, could allow the trial court to conclude that this was more than simply an innocent touch.

Other facts also support concluding that Brauer touched J.N. for the purpose of sexual arousal or gratification. Brauer acknowledged that, with Jeremy and Danae present, he had shared "a kiss and hug of some kind with [J.N.] prior to the touching and that it made him feel really good," though Brauer said it made him feel good mentally, not sexually. In speaking with one investigator, Brauer said the kiss made him feel a "spark." Most damning, however, are Brauer's statements during Andrew's interview with Brauer describing his touching J.N. We set out the critical part of the interview below:

LT. KEITH ANDREW: Okay. Tell me what — show me what happened. If this is his groin area, how did you touch him? Say this is — this is his groin area. It's my knee, okay. I'm not big into touches, but go ahead and show me one time. Show me how it happened.

NATHAN BRAUER: Oh, my God.

LT. KEITH ANDREW: What?

NATHAN BRAUER: I poked him like that.

LT. KEITH ANDREW: Okay. With two fingers?

NATHAN BRAUER: Two fingers. I just poked him like that. Oh.

LT. KEITH ANDREW: And then you stopped; right?

NATHAN BRAUER: Yeah, because he came flying up to me just to jump on me to give me a hug, and he hit me in the nuts. So my reaction was, [J.N.], no, and then I poked him in the nuts. And I thought, what the — oh, okay, sorry, [J.N.]

LT. KEITH ANDREW: Okay. Because you knew that feeling. You were like, stop, don't let this get carried away?

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: Because you care for him? Okay. But there was something sexual that kicked in when you did that?

NATHAN BRAUER: Well, I wouldn't really say sexual. I mean, it just kind of hurt me in a way, I guess.

LT. KEITH ANDREW: Okay.

NATHAN BRAUER: But when I hit him in the nuts, it's like, oh, my God, that's . . .

LT. KEITH ANDREW: So it gave you a spark, for lack of a better term?

NATHAN BRAUER: A spark to never do it again.

LT. KEITH ANDREW: A charge? Okay.

NATHAN BRAUER: It — no. It just kind of give me that hit like, oh, okay, I just fucked up.

LT. KEITH ANDREW: This is wrong, never do this again?

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: You don't do this to kids?

NATHAN BRAUER: No.

LT. KEITH ANDREW: Okay.

NATHAN BRAUER: You do not do that to kids.

LT. KEITH ANDREW: So it was kind of a sexual — had a sexual connotation to it and — but you —

NATHAN BRAUER: Well . . .

LT. KEITH ANDREW: — checked it and stopped?

NATHAN BRAUER: Yeah. I mean, I wouldn't say, like, it got my dick hard or made me, like, you know throb up with it, but it just made me, you know . . .

LT. KEITH ANDREW: Maybe like an adrenaline-type rush?

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: Like a — like a release of some hormone that had a sexual connotation to it?

NATHAN BRAUER: Well, it probably was a little bit of that because I got racked, and I wanted to tell him basically don't do this.

LT. KEITH ANDREW: Okay. Okay. So how many times did this happen? One time?

NATHAN BRAUER: One time.

LT. KEITH ANDREW: Happened one time. Did [J.N.] say anything to you?

NATHAN BRAUER: That hurt.

LT. KEITH ANDREW: Okay.

NATHAN BRAUER: And so I said, I'm like, sorry, [J.N.]

LT. KEITH ANDREW: Okay. And did he tell you to — anything else after that? How about something to the effect, don't ever do that again?

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: Did he tell you that? Do you remember that?

NATHAN BRAUER: I think so. I can't really . . .

LT. KEITH ANDREW: Something? He said something along that lines [sic]? You don't remember the exact terminology; is that right?

NATHAN BRAUER: I don't remember.

LT. KEITH ANDREW: Okay. Okay.

NATHAN BRAUER: I mean, I remember . . .

LT. KEITH ANDREW: So let me make sure I have this right, okay? I want to make sure I'm understanding everything because I don't want to misconstrue anything . . . okay? So I'm going to kind of regurgitate what you've told me.

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: And if there's a correction to be made, tell me.

NATHAN BRAUER: Okay.

. . . .

LT. KEITH ANDREW: Okay. So he was — you guys were playing. He hit you in your groin, which caused you some pain.

NATHAN BRAUER: Oh, yeah.

LT. KEITH ANDREW: Okay.

NATHAN BRAUER: Oh, yeah.

LT. KEITH ANDREW: We've all been there. We know that hurts, okay.

NATHAN BRAUER: Yeah. Yeah.

LT. KEITH ANDREW: And you went like — you used two fingers like this.

NATHAN BRAUER: Uh-huh.

LT. KEITH ANDREW: You went like that to his groin.

NATHAN BRAUER: Uh-huh.

LT. KEITH ANDREW: And . . .

NATHAN BRAUER: Just to pretty much tell him, hey, that hurts, don't do that.

LT. KEITH ANDREW: Okay. And when you did that, there was a — some kind of impulse.

NATHAN BRAUER: Yeah. Yeah.

LT. KEITH ANDREW: The thrill of some kind of sexual . . .

NATHAN BRAUER: I wouldn't really say sexual really, but there was an impulse.

LT. KEITH ANDREW: Okay.

NATHAN BRAUER: I'm just . . .

LT. KEITH ANDREW: And then you did the right thing. You said, I'm never . . .

NATHAN BRAUER: Oh, I fucked up, sorry.

LT. KEITH ANDREW: I'm — I screwed up, the — going through your head, I will never do this again, because you don't like kids. I mean, you like kids, but you don't have a preference for kids.

NATHAN BRAUER: There we go, yeah.

LT. KEITH ANDREW: A sexual preference for kids.

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: Is that fair?

NATHAN BRAUER: Yeah, that's fair.

LT. KEITH ANDREW: Okay. So it happened once. You touched him there. There was a — some kind of sexual urge, not an erection.

NATHAN BRAUER: No, never an erection.

LT. KEITH ANDREW: Okay. But a sexual release of hormones, I guess is a better . . .

NATHAN BRAUER: Yeah, it was . . .

LT. KEITH ANDREW: Is that right?

NATHAN BRAUER: Yeah. It was just a release.

LT. KEITH ANDREW: That's how I'm understanding it.

NATHAN BRAUER: It must have been a release of hormones.

LT. KEITH ANDREW: And then you did the right thing. And right after it happened you were like, I'm never doing this again. I'm not going to touch him. He's my family. He's a little boy. And you've checked it since then.

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: And you haven't done this since?

NATHAN BRAUER: Nope.

LT. KEITH ANDREW: Are you ever going to do that again?

NATHAN BRAUER: Fuck no.

Although Brauer does not endorse the "sexual" modifier, he variously describes having experienced an "adrenaline-type rush," "impulse," and a "release of hormones" from the touch. Brauer made these statements knowing there were allegations that he had touched J.N. with a sexual purpose. We agree with the district court that these statements constitute admissions that Brauer's touch was for the purpose of his sexual arousal or gratification. Viewed as a whole, the record presents sufficient evidence for the fact finder to have found Brauer guilty, beyond a reasonable doubt, of sexually assaulting J.N.

But Brauer points out that there was an innocent explanation for the touch: J.N. had been going through a phase of hitting men in the crotch, and when J.N. hit Brauer in the crotch, Brauer's subsequent touch was a hasty (and ill-advised) reaction, but not sexual in any way. Under our standard of review, however, we do not reweigh evidence or evaluate explanations. And contrary to Brauer's assertion that it was undisputed J.N. had hit Brauer in the crotch before the touch, the district court found this explanation not credible because this "was not something [Brauer] had ever told anyone before" Andrew's interview and, particularly, because it was not something Brauer had ever told his friends Jeremy and Danae. We will not second-guess the district court's determinations in that regard.

Brauer also repeatedly emphasizes that this was a single poke, with two fingers, over J.N.'s clothes and that there was no stroking or fondling or, indeed, any additional movement of the hand or fingers. Brauer emphasizes that there was no evidence that Brauer got an erection, that he told J.N. to keep the touch secret, or that Brauer threatened J.N. And Brauer argues that there was no evidence that he removed his clothing, breathed heavily, or had any other observable signs of arousal. All of this is true; but it does not change the evidence that does exist, which is sufficient for the fact finder to have found Brauer guilty. Whether the district court "failed to weigh[] and act on [the] evidence cautiously"[11] is not something we evaluate; we do not reweigh the evidence.

Finally, Brauer points to several cases where courts have found insufficient evidence of sexual arousal or gratification. We find them materially distinguishable, in various ways. For example, in *In re Interest of Kyle O.*,[12] the Court of Appeals determined that "the State presented insufficient evidence to establish that 'sexual contact' occurred" between a 14-year-old and a 5-year-old. Putting aside the fact that *In re Interest of Kyle O.* involved two minors, the Court of Appeals (reviewing a juvenile case) also operated under a de novo standard of review,[13] a standard far more lenient than ours in this case.

In *State v. Powell*,[14] the Washington Court of Appeals found insufficient evidence of sexual gratification. There, the record showed that the defendant, well known to the child as "Uncle Harry," had hugged the child around her chest while she was seated on his lap.[15] As the defendant helped her off

---

[11] Brief for appellant at 22.

[12] *In re Interest of Kyle O.*, 14 Neb. App. 61, 62, 703 N.W.2d 909, 911 (2005).

[13] See *In re Interest of Kyle O., supra* note 12.

[14] *State v. Powell*, 62 Wash. App. 914, 816 P.2d 86 (1991).

[15] See *id.* at 916, 816 P.2d at 87.

his lap, he "placed his hand on her 'front' and bottom on her underpanties under her skirt."[16] And, on another occasion, while the defendant and the child were waiting for the child's cousin in the defendant's truck, the defendant had "touched both her thighs."[17]

The Washington Court of Appeals reversed, concluding that the defendant's "purpose in both touchings [was] equivocal."[18] The court emphasized several factors, including that the touches were susceptible to innocent explanations, that the child was clothed on each occasion, that the touches occurred on the outside of the clothes, and that the defendant made no threats, bribes, or requests not to tell.[19] Finally, the defendant acknowledged that he might have hugged and touched her, but "[h]e denied ever touching [the child] under her skirt or touching her for sexual gratification."[20] We find this case distinguishable, primarily because of Brauer's statements to Andrew, set forth above, which we (like the district court) view as incriminating admissions.

[3] Brauer cites several other cases as examples of courts having found insufficient evidence of sexual arousal or gratification.[21] We find them distinguishable, and we see no need to recite each of them here. It suffices to say that what those cases demonstrate, along with others we have uncovered, is a simple truth: Whether there is sufficient evidence to prove sexual arousal or gratification (which, by necessity, must generally be inferred from the surrounding circumstances)[22] is extraordinarily fact driven. The facts in this case, considering

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 917, 816 P.2d at 88.

[19] See *Powell, supra* note 14.

[20] *Id.* at 918, 816 P.2d at 88.

[21] See, e.g., *In re Matthew K.*, 355 Ill. App. 3d 652, 823 N.E.2d 252, 291 Ill. Dec. 242 (2005); *People v. Guerra*, 178 A.D.2d 434, 577 N.Y.S.2d 296 (1991); *State v. Brown*, 586 A.2d 1085 (R.I. 1991); *McKeon v. Commonwealth*, 211 Va. 24, 175 S.E.2d 282 (1970).

[22] See *In re Interest of Kyle O., supra* note 12.

our standard of review, constitute sufficient evidence to support the verdict.

## CONCLUSION

Finding sufficient evidence to support the verdict, we affirm.

AFFIRMED.

MILLER-LERMAN, J., dissenting.

I fully recognize the need to protect children, but given the evidence in the record, I respectfully dissent. Even viewing the evidence in a light most favorable to the State as we must, see *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010), and mindful of the limitations of our appellate standard of review as emphasized by the majority, I believe no reasonable finder of fact could find beyond a reasonable doubt on this record that the State established that Brauer's conduct of touching J.N. could be "reasonably construed as being for the purpose of [Brauer's] sexual arousal or gratification" under Neb. Rev. Stat. § 28-318(5)(Cum. Supp. 2012).

The undisputed facts of the incident giving rise to this case are recited by the district court and repeated by the majority. The district court found that the incident can be described as having "happened once, over clothes and involved two fingers." The district court states that "[t]he issue presented in this case is whether the State submitted sufficient evidence to prove beyond a reasonable doubt that [Brauer's] touching of [J.N.] was 'sexual contact' as that term is defined in the law."

The district court made a finding that 4-year-old J.N. had a "phase of striking men in the genital area." The district court further found there was "a list of people that had been hit in the genitals by [J.N.] during this 3-4 week 'phase' when he would do such a thing: . . . his father, his brother and . . . (a family friend) were referenced." Contrary to the majority, I do not read the district court's order as having found that J.N. did not hit Brauer in the crotch. To the contrary, the district court summarizes Brauer's testimony as follows: "J.N. struck [Brauer] in the genitals [and Brauer] wanted to show [J.N.] how that felt so he struck [J.N.] or poked him there to do so."

This case was tried to the court, and we have the advantage of particularized findings on which the verdict relies.

Even with our limited standard of review, we can look at the record to determine whether there is evidence in the record which supports the findings of fact. The district court found there was sexual conduct by Brauer based on "direct evidence in the form of the admissions" of Brauer to Lt. Keith Andrew. In particular, the district court found that Brauer "acknowledge[d] a release of hormones and/or adrenaline" after touching J.N., and it is this finding of fact which the district court characterizes as the admission that serves as the basis for the conviction. Indeed, the district court's emphasis on "hormones and/or adrenaline" is demonstrated by the district court's reference to this phrase three times in the opinion. Further, the district court equates—incorrectly in my view—hormones and adrenaline.

The district court quotes Brauer's interview with Lieutenant Andrew at length, but nowhere in the quote does Brauer use the word "adrenaline." And as both the district court and the majority note, although Lieutenant Andrew uses the word "sexual" a number of times when questioning Brauer, Brauer never adopts the term. So we cannot say that Brauer used the word "hormone" in the sense of a sex-specific hormone.

As for the word "adrenaline" on which the district court heavily relies, it is used once by Lieutenant Andrew in the lengthy interview and, as I read it, Brauer is describing the feeling he experienced when he got hit in the genitals, or its use is ambiguous, but it does not describe beyond a reasonable doubt the feelings he experienced as a result of touching J.N. In the passage, Lieutenant Andrew and Brauer are talking over each other rather than clearly engaging in a question-and-answer exchange. The passage which includes the critical word "adrenaline" reads as follows:

LT. KEITH ANDREW: Maybe like an adrenaline-type rush?

NATHAN BRAUER: Yeah.

LT. KEITH ANDREW: Like a — like a release of some hormone that had a sexual connotation to it?

NATHAN BRAUER: Well, it probably was a little bit of that because I got racked, and I wanted to tell him basically don't do this.

Even if we accept the finding of the district court that Brauer admitted he experienced an "adrenaline" rush as a result of touching J.N., such facts do not constitute proof that the touch was "for the purpose of sexual arousal or gratification." The key issue is not what sensation Brauer experienced after he touched the child, but, rather, what motivated him to touch J.N. in the first place. The only evidence of this is Brauer's statement that he was reacting to the child's striking him in the genitals in an effort to stop such conduct. Of course, the reaction was inappropriate and ill advised, but that does not mean that it was for the purpose of sexual arousal or gratification. In my view, there is no evidence in this record upon which a finder of fact could reasonably conclude beyond a reasonable doubt that Brauer touched the child for that purpose. His actions may have constituted negligent child abuse or some other offense, but not the offense of sexual assault with which he was charged.

WRIGHT and STEPHAN, JJ., join in this dissent.

———————————

JOHN JACOBITZ, APPELLEE, V.
AURORA COOPERATIVE, APPELLANT.
___ N.W.2d ___

Filed December 27, 2013.    No. S-13-091.

1.  **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2.  **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
3.  **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.
4.  **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), an appellate court may review three types of final orders: (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.
5.  **Workers' Compensation: Appeal and Error.** A party can appeal an order from the Workers' Compensation Court if it affects the party's substantial right.