Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/30/2018 09:12 AM CST

State of Nebraska, appellee, v.
Jacob T. Cheloha, appellant.
___ N.W.2d ___

Filed January 9, 2018.    No. A-16-925.

1. **Trial: Juries: Evidence.** The trial judge has discretion to allow the jury
   to reexamine evidence during deliberations.
2. ____: ____: ____. Trial courts have broad discretion in allowing the jury
   to have unlimited access to properly received exhibits that constitute
   substantive evidence of the defendant's guilt.
3. **Trial: Juries: Evidence: Appeal and Error.** A trial court's decision to
   allow a jury during deliberations to rehear or review evidence, whether
   such evidence is testimonial or nontestimonial, is reviewed by an appel-
   late court for an abuse of discretion.
4. **Trial: Evidence.** Testimonial evidence refers to trial evidence, including
   live oral examinations, affidavits and depositions in lieu of live testi-
   mony, and tapes of examinations conducted prior to the time of trial for
   use at trial in accordance with procedures provided by law.
5. ____: ____. Heightened standards which require the trial court to weigh
   the probative value of the testimony against the danger of undue empha-
   sis and allow the court to strictly control the procedures for reviewing
   tape-recorded evidence apply only to testimonial evidence.
6. **Pretrial Procedure: Trial: Evidence: Appeal and Error.** Where there
   has been a pretrial ruling regarding the admissibility of evidence, a party
   must make a timely and specific objection to the evidence when it is
   offered at trial in order to preserve any error for appellate review.
7. **Trial: Evidence: Motions to Suppress: Waiver: Appeal and Error.**
   The failure to object to evidence at trial, even though the evidence was
   the subject of a previous motion to suppress, waives the objection, and
   a party will not be heard to complain of the alleged error on appeal.
8. **Appeal and Error.** An objection, based on a specific ground and prop-
   erly overruled, does not preserve a question for appellate review on
   some other ground not specified at trial.

9. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

10. **Rules of Evidence: Hearsay.** Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016).

11. ____: ____. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted.

12. ____: ____. A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception.

13. ____: ____. The hearsay rule does not exclude statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

14. ____: ____. The hearsay exception for statements made for the purpose of medical diagnosis or treatment is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment.

15. **Rules of Evidence: Hearsay: Police Officers and Sheriffs.** A statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes, and even the declarant's knowledge that law enforcement is observing or listening to the statements does not necessarily preclude admissibility of a statement as being for a medical purpose.

16. **Rules of Evidence: Hearsay.** In applying the hearsay exception for statements made for the purpose of diagnosis or treatment, the fundamental inquiry to determine whether the statement, despite its dual purpose, was made in legitimate and reasonable contemplation of medical diagnosis or treatment, because if the challenged statement has some value in diagnosis or treatment, the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment.

17. ____: ____. Statements having a dual medical and investigatory purpose are admissible under the hearsay exception for statements made for the purpose of medical diagnosis or treatment only if the proponent

of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.

18. ____: ____. Under the hearsay exception for statements made for the purpose of medical diagnosis or treatment, the appropriate state of mind of the declarant may be reasonably inferred from the circumstances.

19. **Criminal Law: Intent: Intoxication.** Voluntary intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense.

20. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

21. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

22. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

23. **Sexual Assault: Words and Phrases.** A person commits third degree sexual assault of a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older and does not cause serious personal injury to the victim.

24. ____: ____. Sexual contact means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts and includes only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

25. **Sexual Assault: Proof.** Whether there is sufficient evidence to prove sexual arousal or gratification (which, by necessity, must generally be inferred from the surrounding circumstances), is extraordinarily fact driven.

26. ____: ____. The relevant question in determining whether there is sufficient evidence to prove sexual arousal or gratification for purposes of third degree sexual assault is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

27. **Motions for Mistrial: Appeal and Error.** Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

28. **Trial: Prosecuting Attorneys.** A prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant, and a lawyer shall not, in trial, state a personal opinion as to the credibility of a witness or the guilt or innocence of an accused.

29. ____: ____. When a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense.

30. ____: ____. In cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence.

31. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

32. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

33. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Thomas M. Wakeley, and Nicholas Yost, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

Riedmann, Judge.

## INTRODUCTION

Jacob T. Cheloha appeals his convictions in the district court for Douglas County of two counts of third degree sexual assault of a child. We find no merit to the arguments raised on appeal and therefore affirm the convictions and sentences.

## BACKGROUND

In May 2015, R.C., then age 12, disclosed to her school counselor that her uncle, Cheloha, had touched her buttocks on multiple occasions while she slept. Cheloha was ultimately charged with two counts of third degree sexual assault of a child. Following a jury trial, he was found guilty of both counts and sentenced to 2 to 2 years' incarceration on count I and 3 years' probation on count II. We will provide additional facts as necessary in our analysis of the assigned errors below. Cheloha timely appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Cheloha assigns, renumbered and restated, that the district court erred in (1) failing to exercise discretion in allowing the jury access to the video of his police interrogation during deliberations, (2) denying his motion to suppress, (3) allowing a sexual assault nurse examiner to testify, (4) submitting a jury instruction on intoxication, (5) finding sufficient evidence to sustain the guilty verdicts, (6) failing to find prosecutorial misconduct or granting a mistrial on that basis, and (7) imposing excessive sentences.

## ANALYSIS

*Allowing Jury Access to Video.*

During deliberations, the jury asked the court for access to a video recording of the police interrogation of Cheloha, which had been received into evidence and played during the trial. After discussing the matter with the parties and over Cheloha's objection, the court allowed the jury unrestricted

access to the video. On appeal, Cheloha argues that the district court erred in doing so, because the trial court failed to exercise its discretion. We find no abuse of discretion in allowing the jury access to the video during deliberations.

[1-3] Under Nebraska case law, the trial judge has discretion to allow the jury to reexamine evidence during deliberations. *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013). Under this rule, trial courts have broad discretion in allowing the jury to have unlimited access to properly received exhibits that constitute substantive evidence of the defendant's guilt. *Id*. A trial court's decision to allow a jury during deliberations to rehear or review evidence, whether such evidence is testimonial or nontestimonial, is reviewed by an appellate court for an abuse of discretion. *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014).

[4] In the present case, the district court characterized the video as substantive, nontestimonial evidence, and we agree. As explained in *State v. Vandever, supra*, testimonial evidence refers to trial evidence, including live oral examinations, affidavits and depositions in lieu of live testimony, and tapes of examinations conducted prior to the time of trial for use at trial in accordance with procedures provided by law. Here, although verbal in nature, the recording was not prepared as or admitted into evidence as a substitute for live testimony at trial. Therefore, the trial court had broad discretion in allowing the jury to have unlimited access to the exhibit during deliberations.

Cheloha argues that based upon the comments of the court, it appears as though the trial judge mistakenly believed the law required that he allow the jury access to the video. The court specifically stated that "[the video] is substantive evidence. Therefore, although I — whether I say I agree with you or not, I feel like I'm controlled by rules of law and I think I have to allow [the jury] to review it." In response to a question from defense counsel as to whether the decision was discretionary, the court further stated:

I understand. That's — you may find different rulings from different judges, but I consider it to be — my personal opinion may be different than what I'm saying on the record, but my understanding of the state of the law is that [the jury is] allowed to review it, so I'm going to permit that.

While the court may have been mistaken in thinking that it was required to allow the jury to review the video, we find no abuse of discretion in its decision allowing the jury to do so. At oral argument, Cheloha argued that the video in the instant case was dangerously close to being testimonial and that thus, there was a risk of the jury impermissibly placing undue emphasis on the video compared to other evidence. Cheloha also argued that the present case is distinguishable from *State v. Vandever, supra*, because the video here was much longer than the 8-minute video in *Vandever*; there was no physical evidence to corroborate R.C.'s claims like there was in *Vandever*; the tone of the conversation here was more akin to an interrogation; and the jury in the present case was allowed unfettered access to the video, which allowed it to view the video an unlimited number of times and closely scrutinize Cheloha's statements and body language.

[5] Heightened standards which require the trial court to weigh the probative value of the testimony against the danger of undue emphasis and allow the court to strictly control the procedures for reviewing tape-recorded evidence apply only to testimonial evidence, however. See *id.* And it is undisputed that the video here was substantive, nontestimonial evidence. Thus, the court was not required to weigh the danger of the jury placing undue emphasis on the video before allowing access to it.

In addition, we find no basis by which to distinguish the instant case from *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). We acknowledge the differences Cheloha points out, but find no abuse of discretion in allowing the jury to review the video. Trial courts have broad discretion in allowing the jury *unlimited* access to properly received exhibits that

constitute substantive evidence. *Id*. Thus, the fact that the court allowed the video into the jury room without limitations was within the court's discretion. Accordingly, we find no merit to this assignment of error.

*Motion to Suppress.*

Cheloha argues that the district court erred in denying his motion to suppress statements he made during his recorded interview, because they were unconstitutionally coerced. We conclude that this issue has not been preserved for appellate review.

[6-8] Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *Id*. Furthermore, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial. *Id*.

In the instant case, when the video recording of the interview was offered into evidence, defense counsel did not object to the evidence on the constitutional grounds raised in the motion to suppress and did not renew the motion to suppress at that time; rather, defense counsel instead objected on hearsay grounds, which the court overruled. Then, at the close of all evidence, Cheloha renewed his motion to suppress. Thus, because he failed to timely renew his constitutional objection at trial, Cheloha waived his assignment of error concerning his motion to suppress.

*Admissibility of Cleaver's Testimony.*

Cheloha argues that the district court erred in allowing Sarah Cleaver, a pediatric nurse practitioner who is also trained

as a sexual assault nurse examiner, to testify at trial about the statements R.C. made to her. Cheloha claims that Cleaver's testimony was hearsay not within the medical diagnosis and treatment exception. See Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016). We disagree.

[9,10] Apart from rulings under the residual hearsay exception, we will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence under rule 803(3). *State v. Jedlicka, supra*.

[11,12] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2016). See, also, *State v. Jedlicka, supra*. A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. See, Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2016); *State v. Jedlicka, supra*.

[13,14] Rule 803(3) provides that the hearsay rule does not exclude statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Rule 803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *State v. Jedlicka, supra*.

Cheloha claims that in order to fall within the rule 803(3) exception to the hearsay rule, the statement must be made for

the primary purpose of treatment, and not forensic or investigatory purposes. He asserts that Cleaver's examination of R.C. was forensic in nature and for the purpose of gathering evidence rather than for the purpose of medical treatment. He notes that the examination was scheduled "with the hope of [R.C.] disclosing additional [abuse]" and that therefore, the primary purpose of the examination was for investigatory purposes, making it outside the realm of the rule 803(3) exception. Brief for appellant at 22.

[15,16] However, a statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes. *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). Even the declarant's knowledge that law enforcement is observing or listening to the statements does not necessarily preclude admissibility of a statement as being for a medical purpose. *Id*. Further, the predominant purpose of the statement is not the real question in determining admissibility. *Id*. The fundamental inquiry is whether the statement, despite its dual purpose, was made in legitimate and reasonable contemplation of medical diagnosis or treatment, because if the challenged statement has some value in diagnosis or treatment, the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment. *Id*.

[17,18] Statements having a dual medical and investigatory purpose are admissible under rule 803(3) only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *State v. Vigil, supra*. Under rule 803(3), there need not be direct evidence of the declarant's state of mind; instead, the appropriate state of mind of the declarant may be reasonably inferred from the

surrounding circumstances. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

In the present case, Cleaver is a pediatric nurse practitioner who is also trained as a sexual assault nurse examiner. R.C. told her grandmother about some symptoms she was experiencing and about which she was worried. The concerns were relayed to the Child Protective Services worker, who requested that Cleaver examine R.C. Cleaver's examination of R.C. was conducted 2 days after R.C. disclosed the abuse. At the outset of the examination, Cleaver explained to R.C. that she was a nurse practitioner and was going to give R.C. a checkup to make sure that she was healthy. R.C. voiced particular symptoms she was experiencing, which Cleaver testified are important for her to know in order to help guide the examination and so that she can make a diagnosis and formulate a treatment plan including any appropriate testing or medication.

Over Cheloha's hearsay objection, Cleaver testified that R.C. told her she had some intermittent burning with urination and vaginal discharge. Cleaver explained to R.C. that in order to do the appropriate testing, she needed to know more about the sexual abuse. R.C. told her that beginning in the summer of 2014 and continuing until 4 days prior to the examination, while she was sleeping, Cheloha would touch her buttocks with his hand and that most of the time the touching occurred over her clothes. Cleaver explained that she could conduct a vaginal examination and/or test for sexually transmitted diseases. R.C. declined the vaginal examination, but Cleaver completed a general medical examination. Disease testing was also completed, and the results were negative. Despite Cheloha's claim, Cleaver testified that the examination she performed on R.C. was not a forensic examination.

Based on the foregoing, we conclude that R.C.'s statements to Cleaver were made for the purpose of medical diagnosis and treatment and that thus, they fall within the medical exception of the hearsay rule. Accordingly, the trial court did

not err in allowing Cleaver to testify about R.C.'s statements regarding the assault.

*Jury Instruction on Intoxication.*

Cheloha asserts that the district court erred in instructing the jury that intoxication is not a defense to the crime charged. He claims the instruction was erroneous because he was charged under a crime requiring specific intent, and under common law, intoxication may be considered to negate the specific intent of a crime. We find no merit to this argument.

[19] Whether intoxication is a defense under common law is irrelevant, because in 2011, the Legislature enacted a statute that provides that voluntary intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense. Neb. Rev. Stat. § 29-122 (Reissue 2016) specifically states:

> A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense unless the defendant proves, by clear and convincing evidence, that he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

The instruction given to the jury in the present case mirrored the language of § 29-122.

[20-22] Whether jury instructions given by a trial court are correct is a question of law. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id.* In an appeal based on a claim of an erroneous jury instruction, the appellant has

the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

Here, it is undisputed that any intoxication on the part of Cheloha was voluntary. Therefore, under § 29-122, such intoxication does not negate the intent required to commit third degree sexual assault of a child. Accordingly, the court did not err in instructing the jury that intoxication is not a valid defense. We therefore reject Cheloha's argument to the contrary.

*Sufficiency of Evidence.*

Cheloha argues that the evidence was insufficient to sustain the verdicts. We disagree.

[23,24] The information alleged that Cheloha committed third degree sexual assault of a child between May 1, 2014, and May 15, 2015, and again on or about May 16, 2015. A person commits third degree sexual assault of a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older and does not cause serious personal injury to the victim. See Neb. Rev. Stat. § 28-320.01(1) and (3) (Reissue 2016). Sexual contact means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Neb. Rev. Stat. § 28-318(5) (Reissue 2016). Sexual contact includes "only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." *Id.*

Here, the parties' ages and the lack of injury to R.C. are not in dispute. R.C. testified that Cheloha intentionally touched her buttocks, conduct which meets the definition of sexual contact. The question then becomes whether the evidence was sufficient to prove that the touching was done for the purpose of sexual arousal or gratification.

[25,26] Whether there is sufficient evidence to prove sexual arousal or gratification (which, by necessity, must generally be inferred from the surrounding circumstances) is extraordinarily fact driven. *State v. Brauer*, 287 Neb. 81, 841 N.W.2d 201 (2013). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). The Supreme Court has previously affirmed a conviction for third degree sexual assault of a child where the assault consisted of one touch over the clothes, a decision based in large part on our deferential standard of review. See *State v. Brauer, supra*.

The present case consists of more instances of touching coupled with additional circumstances supporting the jury's decision. Here, Cheloha and R.C. lived with the woman who is both Cheloha's mother and R.C.'s grandmother. Cheloha is R.C.'s uncle and was "in charge" when her grandmother was ill. Cheloha was aware of R.C.'s history of being in foster care and knew that she had had a "tough" upbringing. The touching occurred at night while R.C. and her grandmother were sleeping. R.C. explained that Cheloha would move his hand around her buttocks and sometimes lightly squeeze. R.C. testified that during the summer of 2014, Cheloha touched her inappropriately on more than three occasions. She explained that the inappropriate touching stopped for a while but started again in May 2015. On Friday, May 15, 2015, R.C. told her school counselor what Cheloha was doing to her. The following Monday, R.C. again reported Cheloha's behavior to her school counselor and explained that Cheloha had touched her again the previous weekend.

Cheloha admitted that he sometimes watched pornography at the house. After Cheloha touched R.C. on or around May 16, 2015, she said he went back to his bedroom where she observed him watching a video on his cell phone from which she could hear moaning. A jury could reasonably infer that

Cheloha was watching a pornographic video. Viewing all of the facts presented in the present case in the light most favorable to the prosecution, a rational jury could conclude that an adult touching and squeezing the private parts of a vulnerable young girl on multiple occasions and subsequently watching pornography was done for the purpose of sexual arousal or gratification. Accordingly, we conclude that the evidence was sufficient to sustain the guilty verdicts.

*Prosecutorial Misconduct.*

Cheloha assigns that the district court erred in failing to find prosecutorial misconduct and failing to grant a mistrial on that basis. We find no merit to this argument.

During closing arguments, Cheloha's counsel questioned why, after the inappropriate touching had allegedly been ongoing for more than a year, R.C. chose that particular day in May 2015 to report the abuse to her school counselor. He observed that R.C. had recently begun spending time with her biological mother, with whom she had an estranged relationship, and noted that after R.C. reported Cheloha's actions, R.C. had been removed from her grandparents' house and was living closer to her mother. Thus, he inferred that R.C. and her mother made up allegations of sexual assault against Cheloha so that R.C. could be closer to her mother. During the State's rebuttal closing argument, the prosecutor responded to Cheloha's inference, observing that R.C. had disclosed the abuse to her grandmother on at least one occasion in 2014 and stating:

> And if mom is the one feeding this to her, don't you think mom's the one who would have called the police, shouting at the rooftops, [m]y daughter's being molested? Don't you think she'd be in here crying her eyes out for all of you to see the show she wants to put on about her daughter?

Cheloha objected to the comments and moved for mistrial, arguing that the State's reference to R.C.'s mother and why

she did not testify was improper because the State could have called her as a witness. The court denied the motion for mistrial, finding that even if the comment was improper, it constituted harmless error.

[27] Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

[28-30] A prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant, and a lawyer shall not, in trial, state a personal opinion as to the credibility of a witness or the guilt or innocence of an accused. See *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). But when a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. *Id*. Thus, in cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence. *Id*.

Here, we conclude that the prosecutor was commenting on the defense's theory that R.C. and her mother colluded to falsify the allegations against Cheloha and arguing that the theory was illogical and not supported by the evidence. The prosecutor argued to the jury that if R.C.'s mother had participated in making up the sexual abuse, there would have been evidence that she called the police or otherwise reported the ongoing abuse, and she likely would have testified at trial regarding R.C.'s disclosures to her, but there was no such evidence. We disagree with Cheloha's assertion that the prosecutor's comments focused on why R.C.'s mother did not testify at trial; rather, the comments focused on the lack of evidence

supporting the defense's theory of collusion between R.C. and her mother. We therefore find that the comments did not constitute misconduct. Accordingly, the district court did not abuse its discretion in denying Cheloha's motion for mistrial.

*Excessive Sentences.*

Cheloha argues that the sentences imposed by the district court are excessive. We find no abuse of discretion in the sentences imposed.

Third degree sexual assault of a child is a Class IIIA felony. § 28-320.01. At the time of Cheloha's offenses, a Class IIIA felony carried a punishment of up to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Thus, Cheloha's sentences of 2 to 2 years' incarceration on count I and 3 years' probation on count II fall within the statutory limits.

[31-33] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id*. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id*.

At sentencing, the court determined that a period of incarceration was warranted for the benefit of society and in considering the impact Cheloha's actions had on R.C. and the rest of the family. Thus, the court imposed a sentence of incarceration on count I. Additionally, the court found a period

of probation was appropriate for count II so that Cheloha could continue to be monitored and required to abide by certain conditions.

As the State recognized at sentencing, Cheloha took advantage of his young, vulnerable niece, for whom he was a parental figure, over a long period of time. R.C.'s mother stated at sentencing that as a result of the abuse, R.C. now "cring[es] whenever someone gives her a hug or kiss on the cheek" and she will be "in therapy for . . . years" to address her trauma. Based on the record before us, we cannot find that the sentences imposed constitute an abuse of discretion.

## CONCLUSION

We find no merit to the errors Cheloha raised on appeal. We therefore affirm his convictions and sentences.

Affirmed.